UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL PARRISH,

                    Petitioner,                    Case No. 1:14-cv-662

v.                                              Honorable Paul L. Maloney

LORI GIDLEY,

                    Respondent.

_____/

## OPINION

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**<u>Factual Allegations</u>**

Petitioner Daniel James Parish presently is incarcerated at the Oaks Correctional Facility.  Following a jury trial in the Muskegon County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC I), MICH. COMP. LAWS § 750.520b, and assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84.  On April 12, 2011, Petitioner was sentenced to concurrent prison terms of 171 to 285 months and 48 to 120 months for the respective convictions.

Petitioner appealed as of right to the Michigan Court of Appeals.  In the brief filed by counsel, Petitioner raised two claims:

I.      PETITIONER IS ENTITLED TO EITHER A NEW TRIAL OR DISMISSAL OF THE CONVICTION AND SENTENCE FOR FIRST DEGREE CRIMINAL SEXUAL CONDUCT WHERE THERE WAS INSUFFICIENT EVIDENCE TO FIND THAT CONVICTION.

II.     PETITIONER IS ENTITLED TO RESENTENCING WHERE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE SCORING OF PRIOR RECORD VARIABLE 7 AND OFFENSE VARIABLE 1 WERE IN ERROR.

(Pet. ¶ 6, docket #1, Page ID#3.)  He subsequently filed a Standard 4 pro per supplemental brief raising two additional grounds:

I.      PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL.

II.     PETITIONER WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS WHERE THIS CASE INVOLVES EGREGIOUS POLICE AND PROSECUTOR MISCONDUCT.

(*Id.*) In an unpublished opinion issued November 8, 2012, the court of appeals affirmed his convictions and sentences. Petitioner sought leave to appeal the same four grounds to the Michigan Supreme Court. The court denied leave to appeal on April 29, 2013.

In his habeas application, Petitioner raises all four grounds presented to and rejected by the Michigan appellate courts.

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). The Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). "In *Greene*, the Court clarified that state courts must

follow clearly established law as it existed 'at the time of the state-court adjudication on the merits.'" *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014). "That is, under 28 U.S.C. § 2254(d), 'clearly established Federal law' is the law at the time the original decision was made, not as [the Sixth Circuit had previously held], the law 'before the conviction became final.'" *Miller*, 642 F.3d at 644 (quoting *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1);  *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir.

2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v.*

*Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

       I.      <u>Sufficiency of the Evidence</u>

      In his first ground for habeas relief, Petitioner contends that the prosecutor presented

insufficient evidence of penetration to support his conviction on CSC I.  A § 2254 challenge to the

sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the essential elements

of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's

responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts.  *Id.*   Issues of credibility may not be

reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02

(1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in

the light most favorable to the prosecution, with specific reference to the elements of the crime as

established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97

(6th Cir. 1988).

      The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of

fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts."  *Id*.  Moreover, because both the *Jackson* standard and

AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

The Michigan Court of Appeals thoroughly discussed Petitioner's claim:

On appeal, defendant argues that the prosecution presented insufficient evidence to support his conviction. We disagree. This Court reviews de novo a claim of insufficient evidence. *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Moreover, "when reviewing claims of insufficient evidence, this Court must make all reasonable inferences and resolve all credibility conflicts in favor of the jury verdict." *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004).

"Due process requires that the prosecutor introduce sufficient evidence that could justify a trier of fact in concluding that defendant is guilty beyond a reasonable doubt." *People v Fisher*, 193 Mich App 284, 287; 483 NW2d 452 (1992). Under MCL 750.520b(1), a person is guilty of CSC I if he "engages in sexual penetration with another person . . . under circumstances involving the commission of any other felony," MCL 750.520b(1)(c), while armed with a weapon, MCL 750.520b(1)(e), or if he "causes personal injury to the victim and force or coercion is used to accomplish sexual penetration," MCL 750.520b(1)(f). Fellatio constitutes "sexual penetration" under the statute. MCL 750.520a(r).

"It is a well established rule that a jury may convict on the uncorroborated evidence of a CSC victim." *People v Lemmon*, 456 Mich 625, 642 n 22; 576 NW2d 129 (1998); see also MCL 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g."). Here, the victim testified that defendant inserted his penis into her mouth and forced her to perform fellatio. Moreover, the victim testified that the sexual penetration occurred amidst defendant's physical assault of her and while he wielded a knife and threatened to kill her if she resisted the sexual penetration. Such testimony supported a finding that

-6-

defendant's sexual penetration occurred "under circumstances involving the commission of any other felony," MCL 750.520b(1)(c), that defendant was armed with a weapon, MCL 750.520b(1)(e), and that defendant "cause[d] personal injury to the victim and force or coercion [was] used to accomplish sexual penetration," MCL 750.520b(1)(f).  Accordingly, the victim's testimony was sufficient to support the jury's finding that defendant committed CSC I. MCL 750.520h; *Lemmon*, 456 Mich at 642 n 22.

On appeal, defendant maintains that the victim's testimony was insufficient evidence because she was not a credible witness.  However, "[q]uestions of credibility are left to the trier of fact and will not be resolved anew by this Court." *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).  Therefore, we find that there was sufficient evidence to support the jury's finding that the prosecution proved the essential elements of CSC I beyond a reasonable doubt. *Wolfe*, 440 Mich at 515.

*See People v. Parrish*, No. 303746, at *1 (Mich. Ct. App. Nov. 8, 2012), http://publicdocs.courts.mi.gov:81/opinions/final/coa/20121108_c303746_56_303746.opn.pdf (last visited July 17, 2014).

The state court's determination was patently reasonable based on the following evidence described by the court:

In the early morning hours of April 18, 2010, defendant and the victim were alone in the garage of the home of defendant's mother.  Defendant became angry with the victim and slammed her to the garage floor and began hitting her. Defendant then picked up a nearby box cutter knife and threatened to kill the victim if she did not perform fellatio on him.  Defendant  inserted his penis into the victim's mouth, but did not ejaculate.  Thereafter, defendant slammed the victim to the ground again and continued to assault her.  Eventually, defendant allowed the victim to go inside the house and the assault ceased.  The victim eventually called police, and defendant was arrested that morning.  At trial, defendant acknowledged physically assaulting the victim, but denied sexually penetrating her or threatening her with the box-cutter knife.

*Id*.  As previously discussed, a state court's factual findings are presumed to be correct, which may only be rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.  In the statement of facts in the attached brief on appeal, upon which Petitioner relies to support his habeas application, Petitioner does not substantially contest the court's

description of the evidence introduced at trial, though he disagrees with whether it should have been believed.  (*See* Br. on Appeal, docket #1-1, Page ID##7-11.)  Petitioner summarizes the victim's testimony as follows:

> Defendant got mad and grabbed Ms. Williams by the hair and knocked her down, causing her chin to hit the floor.  Defendant then sat on her and continued to punch her in the face with a closed fist.  When Defendant got up, he kicked her and told her that she was going to die.  Defendant forced her into a chair by a desk that was in the garage, and then decided he wanted to have oral sex with her.  She saw his erect penis, and said Defendant put a box cutter to her neck threatening to kill her.  Her mouth was dry, but he was able to put part of his penis in her mouth.  Defendant then made her drink some beer to wet her mouth, and then tried to put his penis in her mouth a second time.

> Defendant then knocked her down, turned her over, and said he was going to stick it up her ass.  Ms. Williams scooted away on her hands and knees, and tried to get Defendant to go to the bedroom with her, agreeing to do it there.  Defendant pulled her pants and underwear down and bit her on her buttocks.  There was no penetration.  She did not yell or scream, fearing it would make it worse.

(*Id.*, Page ID##7-8.)

In light of the victim's testimony, which Petitioner concedes was given, ample evidence existed that unwanted oral penetration occurred.  Under Michigan law,

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

> . . .

> (c)    Sexual penetration occurs under circumstances involving the commission of any other felony.

> . . .

> (e)    The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

(f)     The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration.  Force or coercion includes, but is not limited to, any of the following circumstances:

(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

MICH. COMP. LAWS § 750.520b(1)(c), (e), (f).  In addition, "'[s]exual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other *intrusion, however slight*, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."  MICH. COMP. LAWS § 750.520a(r) (emphasis added).

As the state court appropriately held, the victim testified that Petitioner had pushed his penis part of the way into her mouth, fully meeting the definition of penetration.  The victim's testimony about the force Petitioner used in hitting her and his use of a box cutter to threaten her supported a finding of CSC I under three theories:  (1) during the commission of a physical assault; (2) while armed with a weapon; and (3) causing personal injury and using force or coercion. Because the victim's testimony was sufficient to support the evidence to prove each of these theories, the state court's decision was an entirely reasonable application of established Supreme Court precedent.

II.       Prosecutorial Misconduct

In his fourth ground for habeas relief, Petitioner argues that the prosecutor committed

misconduct by failing to disclose exculpatory evidence.  Specifically, he complains that no DNA

tests were conducted on the victim's mouth or on the bite mark on her buttocks.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial

misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v.

Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

(1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability

of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In evaluating the impact of the

prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended

to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the

claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12

(1985).  The court also must consider the strength of the overall proof establishing guilt, whether the

conduct was objected to by counsel and whether a curative instruction was given by the court.  *See

id.* at 12-13;  *Darden*, 477 U.S. at 181-82;  *Donnelly*, 416 U.S. at 646-47;  *Berger v. United States*,

295 U.S. 78, 84-85 (1935).

Applying the correct standard, the Michigan Court of Appeals made the following

findings:

> [D]efendant argues in his standard 4 brief that the prosecution violated his due
> process right to a fair trial by failing to disclose exculpatory evidence.  We disagree.
> "A defendant pressing an unpreserved claim of error must show a plain error that
> affected substantial rights, and the reviewing court should reverse only when the
> defendant is actually innocent or the error seriously affected the fairness, integrity,

or public reputation of judicial proceedings." *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010).

> A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt.  In order to establish a *Brady*[2] violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.  [*People v Cox*, 268 Mich App 440, 448; 709 NW2d 152 (2005) (citations omitted).]

> Defendant, in his standard 4 brief, does not allege any exculpatory evidence that the prosecution possessed and failed to disclose.  Instead, he simply notes certain DNA tests of the victim that medical and police personnel did not conduct.  On the basis of defendant's standard 4 brief and the lower record, we find that defendant has not established the existence of any exculpatory evidence that the prosecution failed to disclose, let alone a reasonable probability that the outcome of his trial would have been different had the prosecution disclosed this evidence.  *Id.*  Accordingly, defendant failed to establish any plain error.

> [2] *Brady v Maryland*, 373 U.S. 83 (1963).

*See Parrish*, No. 303746, at *4, http://publicdocs.courts.mi. gov:81/opinions/final/coa/20121108_ c303746_56_303746.opn.pdf.

The state-court's determination was patently correct.  Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87; *see also United States v. Bagley,* 473 U.S. 667, 675 (1985). The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently;

and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 281 (quoting *Bagley*, 473 U.S. at 682).  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682.

In *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988), the Supreme Court held that, in the case of a failure to preserve forensic evidence, a defendant may prove a due process violation only by showing that the government acted in bad faith, even if the unpreserved evidence was potentially useful to the defendant.  *See Youngblood*, 488 U.S. at 57.  Mere negligence by the government is insufficient to support a *Brady* violation in such circumstances.  *Id.*

Petitioner's allegations fail to support any of the three elements of *Brady* or *Youngblood*.  First, Petitioner's conclusory allegations fall far short of demonstrating that any DNA evidence would have been favorable to him.  The victim testified that Petitioner had only partially penetrated her mouth during the assault and had not ejaculated.  It is doubtful that DNA evidence would have been recovered.  Petitioner therefore has not demonstrated that a DNA test would have produced evidence proving anything, much less that the evidence would have been favorable to Petitioner.

Second, it was the victim who refused the DNA tests; the prosecutor had no ability to force DNA testing.  The prosecutor, therefore, was not responsible for suppressing any evidence, either intentionally or unintentionally.

Third, it was undisputed that the victim had consensual sexual intercourse with Petitioner earlier on the day of the assault.  Neither the presence nor absence of DNA was likely to

-12-

be probative one way or another.  As a result, Petitioner cannot demonstrate that the results of any

DNA test, whether positive or negative, would have had any impact on the result of the proceeding.

      For all these reasons, Petitioner fails to demonstrate that the state court's decision

constituted an unreasonable application of Supreme Court precedent.

      III.    Ineffective Assistance of Counsel

      In Grounds II and III of the petition, Petitioner argues that counsel was ineffective.

In Ground II, Petitioner complains that trial counsel was ineffective in failing object to the scoring

of prior record variable seven (PRV 7) and offense variable one (OV 1).  In Ground III, Petitioner

argues that his trial attorney was ineffective in failing to make certain objections to evidentiary

matters, and he argues that appellate counsel was ineffective for failing to raise additional claims on

appeal.

      In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court

established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To

establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's

performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

A court considering a claim of ineffective assistance must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The

defendant bears the burden of overcoming the presumption that the challenged action might be

considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also*

*Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions

were hard to attack).  The court must determine whether, in light of the circumstances as they existed

-13-

at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficult of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Richter*, 131 S. Ct. at 786).

A.      **Trial Counsel:  Failure to Object to Sentencing Variables**

Petitioner first contends that counsel was ineffective in failing to object to the scoring of PRV 7 at 20 points, based on a finding that he had two or more concurrent or subsequent felony convictions.  *See* MICH. COMP. LAWS § 777.57(1)(a).  He contends that he had only one other relevant conviction, not two.  He therefore asserts that he should have been scored only 10, not 20, points.  MICH. COMP. LAWS § 777.57(1)(b).

-14-

Applying the *Strickland* standard, the court of appeals held:

> Defendant contends that the trial court should have scored PRV 7 at 10 points instead of 20 points because defendant only had one subsequent or concurrent felony conviction. However, as defendant acknowledges in his brief on appeal, even if the trial court would have scored PRV 7 at ten points instead of 20 points, his PRV level and, thus, his recommended minimum sentence range would remain the same. See MCL 777.62. Accordingly, because trial counsel's alleged error in failing to object to the scoring of PRV 7 did not alter defendant's recommended minimum sentence range under the legislative guidelines, defendant fails to demonstrate any prejudice resulting from the alleged error. *Yost*, 278 Mich App at 387. Moreover, we disagree that PRV 7 was improperly scored where defendant pleaded guilty to a subsequent felony. Thus, counsel's failure to object to the scoring, was also not objectively unreasonable.

See *Parrish*, No. 303746, at *1, http://publicdocs.courts.mi. gov:81/opinions/final/coa/20121108_

c303746_56_303746.opn.pdf.

Petitioner concedes in his brief that the court of appeals correctly concluded that any change in scoring on PRV 7 would have not affected his minimum sentence range. By making such a concession, Petitioner necessarily also concedes that his attorney's failure to object was not prejudicial.

In addition, because the court of appeals determined that the variable was properly scored, any objection at sentencing would have been futile.[1] Petitioner therefore cannot demonstrate that counsel, in failing to object to the scoring, rendered deficient performance. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

---

[1]Moreover, the decision of the Michigan Court of Appeals on the application of Michigan sentencing law is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

Petitioner also argues that counsel was ineffective in failing to object to the trial court's decision to score OV 1 at 15 points for the aggravated use of a weapon.  The court of appeals rejected the claim:

> Defendant also contends that his trial counsel should have objected to the trial court's scoring of OV 1 at 15 points for the aggravated use of a weapon.  According to defendant, the trial court should have scored OV 1 at zero points because, in light of the jury's acquittal of his felonious assault charge, the jury found that he did not use a weapon during the assault.  Under MCL 771.31(1)(c), the trial court may score 20 points for OV 1 where "the victim had a reasonable apprehension of an immediate battery when threatened with a knife . . . ."  Initially, we note that defendant's logic is flawed given that his acquittal of felonious assault may plainly be explained by the jury's finding that he assaulted the victim with the intent to inflict great bodily harm less than murder, rather than a finding that defendant did not have a weapon during the assault.  See MCL 750.82.  Moreover, "[a] sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score."  *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).

> The victim testified that defendant wielded a box-cutter knife with the blade exposed, held it up to her neck, threatened to kill her if she resisted his sexual advances, and that she was afraid for her life.  The only direct evidence that defendant did not threaten the victim with a knife was defendant's own testimony.  However, defendant also admitted that he initially lied to the police about assaulting the victim.  Accordingly, we find that the record adequately supported the trial court's scoring of OV 1, *Hornsby*, 251 Mich App at 468, and trial counsel was not ineffective for failing to object, [*People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010)].

*See Parrish*, No. 303746, at *3, http://publicdocs.courts.mi. gov:81/opinions/final/coa/20121108_ c303746_56_303746.opn.pdf.

As previously discussed, the court of appeals' decision on the propriety of scoring the state sentencing variable is binding on this Court.  *See Wainwright*, 464 U.S. at 84; *Stumpf*, 722 F.3d at 746 n.6.  Because the court of appeals found that the sentence was properly scored, any objection

by counsel would have been meritless.  Counsel therefore was not ineffective in failing to object.  *See Smith*, 591 F.3d at 523; *O'Hara*, 499 F.3d at 506.

        For all these reasons, Petitioner fails to demonstrate that the state-court's rejection of his second habeas ground was neither contrary to nor an unreasonable application of established Supreme Court precedent.

**B.**       **Trial Counsel: Failure to Object**

        Petitioner's supplemental brief on appeal, also attached to his petition, is difficult to decipher.  Petitioner apparently contends that his attorney should have objected to the fact that the victim's mouth and buttocks were not tested for DNA and was ineffective in failing to do so.

        The court of appeals addressed Petitioner's conclusory claim as follows:

> In defendant's standard 4 brief, he raises several issues.  First, his statement of questions presented asserts that his trial counsel was ineffective for failing to object "to the taking and preservation of exculpatory evidence . . . ."  However, defendant's standard 4 brief contains no facts or argument regarding his claim that trial counsel was ineffective for failing to object to the taking and preservation of exculpatory evidence.  Thus, defendant has abandoned this ineffective assistance of counsel claim and we decline to review it.  *People v Coy*, 258 Mich App 1, 19-20; 669 NW2d 831 (2003) ("Where a defendant raises an issue in his statement of questions presented but fails to argue the merits in his brief, the issue is abandoned.").

*See Parrish*, No. 303746, at *3, http://publicdocs.courts.mi. gov:81/opinions/final/coa/20121108_c303746_56_303746.opn.pdf.

        In denying Petitioner's claim, the Michigan Court of Appeals expressly relied on its rule requiring that, in order to obtain consideration of a claim on appeal, an appellant may not merely state that claim in his appellate brief.  Unless an appellant provides facts, citations, and arguments in support of the claim, it will be deemed abandoned.  *People v. Coy*, 669 N.W.2d 831, 843 (Mich.

-17-

Ct. App. 2003).  "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

      As previously discussed, the absence of DNA tests did not deprive Petitioner of his due process rights.  Because any objection by counsel would have been meritless, Petitioner can demonstrate neither that counsel's performance was deficient nor that Petitioner was prejudiced. Petitioner's conclusory allegations are wholly insufficient to overcome the strong presumption that counsel provided effective assistance of counsel.

## C.  Appellate Counsel: Failure to Raise Additional Claims

Petitioner argues that appellate counsel was ineffective in failing to raise issues other than sufficiency of the evidence.  As the court of appeals noted, Petitioner fails entirely to identify the additional issues appellate counsel should have raised. *See Parrish*, No. 303746, at *3, http://publicdocs.courts.mi.gov:81/opinions/final/coa/20121108_ c303746_56_303746.opn.pdf.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Because Petitioner has not even identified an issue – much less a meritorious one – he fails entirely to overcome the strong presumption that counsel was effective.  The state court properly applied established Supreme Court precedent in denying Petitioner's claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   August 5, 2014                          /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 Chief United States District Judge